UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| SHAWN WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:19-cv-00442-JPH-DLP |
| | ) |
| RAJOLI, *et al.* | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Shawn Williams, an inmate at the Wabash Valley Correctional Facility, brings this action pursuant to 42 U.S.C. § 1983 alleging that the defendants have provided him inadequate medical care for his knee pain. The defendants move for summary judgment arguing that Mr. Williams failed to exhaust his available administrative remedies before filing lawsuit as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e. For the following reasons, the defendants' motion for summary judgment is **granted**.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on

summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

## II. Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to Mr. Williams as the non-moving party with respect to the motion for summary judgment. *See Barbera v. Pearson Education, Inc.,* 906 F.3d 621, 628 (7th Cir. 2018).

### A. *The Offender Grievance Process*

The Indiana Department of Correction ("IDOC") maintains a policy governing the Offender Grievance Process. Dkt. 26-1, ¶ 6. The purpose of the Offender Grievance Process is to provide an administrative means by which inmates may resolve concerns and complaints related to their conditions of confinement. *Id.,* ¶ 7. Under the Offender Grievance Process, an inmate can grieve actions of individual staff, including claims that facility staff were deliberately indifferent to his medical needs. *Id.*, ¶ 8.

An inmate begins the grievance process by attempting to resolve his complaint informally through correspondence or a Request for Interview form to a staff member and providing evidence of the attempt. *Id.*, ¶ 9, 17-18. If he is unable to informally resolve his complaint, he must submit a completed "Offender Grievance," form no later than 10 business days from the date of the incident giving rise to the complaint or concern to the Offender Grievance Specialist. *Id.* at 18. The Grievance Specialist may return the grievance form if it was not submitted within the 10-business-day time limit. *Id.* at 19.

B. *Mr. Williams's Use of the Grievance Process*

On July 20, 2019, Mr. Williams submitted a Health Care Request form explaining that he was experiencing pain in his knee a day after he learned that his medications were discontinued. Dkt. 32, ¶ 6. On July 23, 2019, Mr. Williams saw Nurse Powers who made him do exercises while he was handcuffed and shackled and denied his request to speak to a doctor about his medications. *Id.*, ¶ 7.

Mr. Williams states that he submitted two informal grievances to Amy Wright, the Director of Nursing, between July 23, 2019 and July 28, 2019, complaining about being taken off of his medication and about Ms. Powers' treatment. *Id.*, ¶ 8. On August 5, 2019, having not received a response to his informal grievances, he again wrote two informal grievances to Ms. Wright on these issues. *Id.*, ¶ 9. One of the informal grievance states: "I was informed by nurse 'Hannah' I was no longer on my medication, but she did not explain why, could you let me know who and why took me off my medication?" *Id.* at 12. The other informal grievance states:

> On July 23, 2019, I was seen by a nurse who's [sic] name I don't know, it was Health Care Request # 426011, she attempted to make me do exercises while I was handcuffed and shackled, and refused to allow me to see the doctor, because I was removed off medications with no explanation.

*Id.* at 14. Mr. Williams asked his case manager C. Dugan to inform him in writing that the document was sent. *Id.* at 13.

On August 12, 2019, Mr. Williams submitted a request for interview slip related to the discontinuance of his chronic care medications. Dkt. 26-1, ¶ 34. That document stated:

> I currently have a 'G' medical code for: cronic [sic] tendinitis at which point medical staff have acted deliberately indifferent to my serious condition. I was removed off my medication without consideration nor communication, later to find the reason was due to x-ray results. On June 26, 2019, results irrelevant to my serious medical condition a blatant lack of concern towards my cronic [sic] conditions, clear sign of malpractice.

Dkt. 26-1 at 26.

On August 15, 2019, Mr. Williams submitted a second request for interview slip that was received on August 19, 2019, regarding being removed off his chronic care medications by Dr. Rajoli. *Id.*, ¶ 35. That document stated:

> I have written you multiple times, yet to receive a response. Back in July I was seen by Dr. Rajoli for x-ray results for my finger at which point he removed me off of my cronic [sic] care medication prescribed to me by another doctor without my acknowledgement, leaving me unaware of such sanction. This is clearly a lack of concern to my cronic [sic] issue by interfering with another doctor's treatment.

*Id.* at 27.

Mr. Williams received a response to his August 12, 2019, informal grievance on August 19, 2019. *Id.*, ¶ 13.

On August 20, 2019, Mr. Williams submitted a formal grievance related to Dr. Rajoli discontinuing his chronic care medications and a nurse who made him perform exercises while shackled. *Id.*, ¶ 36. The Grievance Specialist rejected that grievance stating that Mr. Williams missed the time to grieve the issue because he was aware that his medications were discontinued in July of 2019, but he did not grieve the issue until August of 2019. *Id.*, ¶¶ 37-38. Mr. Williams did not resubmit these grievances or appeal. *Id.*, ¶ 39.

### III. Discussion

The defendants seek summary judgment arguing that Mr. Williams failed to exhaust his available administrative remedies as required by the PLRA before he filed this lawsuit.

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison

life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). Thus, "to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). It is the defendants' burden to establish that the administrative process was available. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

The defendants argue that Mr. Williams failed to exhaust his available administrative remedies because he did not timely follow the grievance process. The Offender Grievance Process requires an offender to attempt to informally resolve his dispute and file a formal grievance within 10 days of the incident giving rise to his complaint. Therefore, for his complaint that he learned his medications were discontinued on July 19, 2019, Mr. Williams had through August 2, 2019, to attempt to resolve his complaint informally and file a formal grievance. For his complaint that Nurse Powers failed to provide him proper treatment for his pain on July 23, 2019, he had through

5

August 6, 2019, to attempt informal resolution and file a formal grievance.[1] Mr. Williams filed a formal grievance on August 20, 2019. It is therefore undisputed that Mr. Williams did not file a timely grievance within these timeframes. Mr. Williams argues however that his failure to do so should be excused because he did not receive a response to his informal grievances and because he initially was unaware of the name of the doctor who discontinued his medications.

First, Mr. Williams argues that the grievance process was unavailable to him because he did not receive a response to his informal grievances.[2] It is true that the failure of prison officials to respond to a grievance may make the grievance process unavailable if the failure to respond prevents the prisoner from exhausting the grievance process. *See Dole*, 438 F.3d at 809 ("Prison officials may not take unfair advantage of the exhaustion requirement … and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhaustion."). But the Grievance Process here does not require that the inmate receive a response to his informal grievance before he files a formal grievance. The policy requires only that he attempt to resolve his complaint informally first and provide proof of the attempt at informal resolution when he files his formal grievance. *See* dkt. 26-1 at 17-18. Thus, when Mr. Williams did not receive a response to his informal grievances, he could have proceeded to file a formal grievance as provided in the Grievance Process. He has

---

[1] The defendants argue that Mr. Williams had through July 29, and August 2, 2019 to file formal grievances on these issues, but this conclusion disregards the fact that the Grievance Process provides 10 *business* days to file a formal grievance. Dkt. 26-1 at 18. Weekends, therefore, do not count toward the ten-day deadline.
[2] The defendants argue that Mr. Williams did not provide sufficient evidence that he submitted informal grievances on these dates because he does not provide a specific date for each grievance or specify the subject of the grievances. But Mr. Williams affirmed in his affidavit that he filed informal grievances between July 23, 2019 and July 28, 2019, "complaining about me being removed off my medication in one and the treatment of Tara Powers during my medical visit on July 23, 2019." Dkt. 32, ¶ 8. For purposes of summary judgment, the Court construes these facts in the light most favorable to Mr. Williams and concludes that he did submit informal grievances during this timeframe. *See Skiba*, 884 F.3d at 717.

provided no reason that he failed to do so that is based on any misconduct by prison staff and he therefore has failed to show that the grievance process was unavailable to him.

Mr. Williams also argues that he could not grieve the discontinuance of his medications before he knew who discontinued his medications. But the policy does not require that an inmate name the staff member responsible for his complaint when submitting an informal grievance. The policy states the offender may discuss "the complaint with the staff member responsible for the situation, or if there is no such single person, with the person who is in charge of the area where the situation occurs." Dkt. 26-1 at 18. Therefore, Mr. Williams could have attempted to resolve the complaint with the person charge of medical care if he did not know the staff member who was responsible for discontinuing his medication. In fact, Mr. Williams did file an informal grievance about Nurse Powers' treatment without naming her. *See* dkt. 32 at 14, 22-23.

In short, Mr. Williams could have filed formal grievances regarding his complaints in this case in the applicable timeframe, but he failed to do so. He therefore failed to exhaust his available administrative remedies before filing this lawsuit and this case must be dismissed.

## IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment, dkt. [24], is **GRANTED**. Judgment dismissing this action without prejudice shall now issue.

**SO ORDERED.**

Date: 5/21/2020

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

SHAWN WILLIAMS
178128
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

All Electronically Registered Counsel